UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| T.D.E. and R.E.E., minor children, by and through CHRISTINE ELDER, their Next Friend, <br><br> Plaintiffs, <br><br> vs. <br><br> LIFE INSURANCE COMPANY OF NORTH AMERICA, <br><br> Defendant. | Case No. 4:07CV1387 CDP |

# MEMORANDUM OPINION AND ORDER

Plaintiffs are the surviving children of Mark Elder, who died August 4, 2002. Plaintiffs bring this Employee Retirement Income Security Act (ERISA) action to recover benefits due under Elder's employee welfare benefit plan. Defendant Life Insurance Company of North America (LINA) has denied claims brought by the plaintiffs under two separate insurance policies. The parties dispute what standard should govern the Court's review of LINA's decisions to deny coverage, and I have directed them to brief the standard of review issue before this case proceeds further. Additionally, the parties disagree on the extent to which discovery beyond the administrative record should be permitted. I conclude that some discovery should be allowed, but that I lack sufficient

information to determine all issues related to the standard of review at this time. I will set a further conference with counsel to determine a schedule for the remainder of the case.

## Background Facts

The parties agree that Elder died as the result of an apparent autoerotic asphyxiation. Elder was found dead lying on his stomach in an upstairs bedroom, wearing only a leather mask and a ligature harness of some sort around his neck and upper torso. A toxicology screen showed traces of amphetamine and methamphetamine in Elder's blood. A medical examiner's autopsy concluded that Elder died an "accidental death due to autoerotic asphyxiation."

Elder held two insurance policies that are at issue in this case. The first is a "BJC Health Care Accidental Death" policy numbered OK 823011, and the second is a "BJC Health Care" policy numbered COA 2532. The exact wording of the policies differs slightly, but both policies contain the same relevant coverage and exclusions. The policies cover losses that are the result of a covered accident. They exclude coverage for intentionally self-inflicted injury and for loss that results from voluntary self administration of any drug or chemical substance not prescribed by a physician. On March 11, 2008, LINA issued a denial letter denying claims under both policies. LINA cited the self-inflicted injury clauses and self-administration of a chemical substance clauses as reasons for the denial.

Plaintiffs exhausted their administrative appeals with LINA, and this case is ripe for judicial review.

### Discussion Regarding Standard of Review

The first step in evaluating a claim under ERISA is determining the appropriate standard of review. When evaluating a challenge to a denial of benefits, the court conducts *de novo* review unless the plan grants its administrator discretionary authority to determine benefit eligibility or construe the terms of the plan. *Janssen v. Minneapolis Auto Dealers Ben. Fund*, 477 F.3d 1109, 1113 (8th Cir. 2006) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). If a plan gives discretion to a plan administrator, the plan administrator's decision is reviewed under a deferential abuse of discretion standard. *Id.*

Here, the policy numbered COA 2532 (the "health care policy") does not grant the plain administrator the discretion to interpret the plan terms. Therefore, LINA's decision to deny coverage under the health care policy is entitled to *de novo* review. The OK 823011 policy (the "accidental death policy"), however, contains a provision which states:

> For plans subject to [ERISA], the Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has selected the Insurance Company as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All

> decisions made by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of the Plan to the full extent permitted by law.

Thus, the accidental death policy grants discretion to LINA to interpret the policy's terms and render a decision. LINA argues that the decision relating to the accidental death policy should be reviewed only for abuse of discretion.

In certain cases a beneficiary may establish facts mandating a less deferential standard, even where the plan grants discretion to the administrator. *Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 899 (8th Cir. 1996). A less deferential standard will apply where the claimant can show that (1) a palpable conflict of interest or a serious procedural irregularity in the plan administrator's decision making existed, which (2) caused a serious breach of the plan trustee's fiduciary duty to the plan beneficiary. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998). A mere conflict or procedural irregularity standing alone, however, is not sufficient. The irregularity must have some connection to the substantive decision reached; i.e., the irregularity must cause the actual decision to be a breach of the plan trustee's fiduciary obligations. *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1031 (8th Cir. 2001); *Buttram*, 76 F.3d at 901.

A "serious procedural irregularity" in this context refers to the sorts of external factors sufficient under the common law of trusts to call for a less

deferential standard of review. *Pralutsky v. Metropolitan Life Insurance Company*, 435 F.3d 833, 838 (8th Cir. 2006). Where a plan trustee labors under a conflict of interest, or acts dishonestly, or from an improper motive, or fails to use judgment, the resulting decision may be accorded stricter scrutiny. *Buttram*, 76 F.3d at 900 (citations omitted). In *Woo v. Deluxe Corp.*, 144 F.3d 1157 (8th Cir. 1998), the Eighth Circuit adopted a "sliding scale" approach to evaluating what sorts of conflicts or procedural irregularities could trigger a lesser standard of review. Under the sliding scale, a reviewing court always reviews for an abuse of discretion where the plan language so requires, but the court decreases the deference given to the administrator in proportion to the seriousness of the conflict of interest or procedural irregularity. *Woo*, 144 F.3d 11t57 at 1161.

While the parties in this case were in the process of submitting their briefs on the standard of review, the Supreme Court decided *Metropolitan Life Insurance Company v. Glenn*, 128 S. Ct. 2343 (2008). In *Glenn*, the Court considered whether a conflict of interest is present when a plan administrator acts in dual roles as an a payor of plan benefits as well as an administrator who decides whether benefits are paid. The Court concluded that an administrator acting in such dual roles does labor under a conflict of interest. However, the Court declined to say that such a conflict warrants a less deferential standard of review in all cases. Rather, the Court adopted a "combination of factors" method in

which the conflict of interest can act "as a tiebreaker when other factors are closely balanced." *Glenn*, 128 S. Ct. at 2351. A conflict is "more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id*. at 2351. The Court's holding in *Glenn* did not call for a wholesale change in the standard of review for ERISA cases. Rather, *Glenn* merely instructs courts to "take into account several different considerations" when evaluating the deference to be afforded a plan administrator's decision, "of which a conflict of interest is one." *Id*.

The Eighth Circuit Court of Appeals has issued two reported opinions discussing the impact of the *Glenn* decision. *See Jones v. Mountaire Corp. Long Term Disability Plan*, 542 F.3d 234 (8th Cir. 2008); *Wakkinen v. UNUM Life Ins. Co. of America*, 531 F.3d 575 (8th Cir. 2008). In *Wakkinen*, the court suggested that post-*Glenn*, the sliding scale approach in *Woo* is still good law, at least when evaluating the severity of procedural irregularities. *See Wakkinen*, 531 F.3d at 582. *Wakkinen* stated that *Glenn* did not change the standard of review, but merely indicated factors a court would consider when conducting the abuse of discretion review. 531 F.3d at 581. In *Jones*, however, the court suggested that the combination-of-factors approach announced by the Supreme Court is a new

method for addressing the standard of review, but instead of applying that method to the case, it remanded the case to the trial court for reconsideration of the standard of review. *Jones*, 542 F.3d at 240.

Following Supreme Court and Eighth Circuit precedent, I conclude I am required to review a plan administrator's decision for abuse of discretion where the plan language requires it. However, in an appropriate case, conflicts of interest, or procedural irregularities, or a combination of both may call for less deference. What *Glenn* makes clear, however, is that a conflict or procedural irregularity cannot be considered in a vacuum. Discovery is required to explore the nature and extent of the purported conflict or irregularity at issue. See *Glenn*, 128 S. Ct. at 2351.

Here, plaintiffs have shown enough of a conflict of interest to suggest that the court might provide a lower level of deference to the decision. The parties agree that LINA acts as both a plan administrator and as the entity paying out money for successful claims, and this in itself is a conflict of interest, on which, under *Glenn*, some discovery should be allowed. In addition, plaintiffs point to a number of procedural irregularities. These irregularities raise a sufficient concern that I believe some discovery should be allowed.

LINA issued its initial denial of plaintiffs' claims on March 11, 2008. A second denial letter affirmed LINA's decision on May 22, 2008. The

administrative record, however, was not produced until June 16, 2008 – the same date that the parties submitted their opening briefs on the standard of review to this Court. This delay is not itself a procedural irregularity per se. However, plaintiffs argue that a lack of access to the administrative record prevented them from obtaining a full and fair administrative hearing.

Plaintiffs point out that both the initial and final denial letters from LINA use selected quotes from Dr. Frederick Fochtman. Dr. Fochtman (who is not a medical doctor but who holds a Ph.D. in pharmaceutical chemistry) concluded in his report that Elder may have ingested amyl nitrate from a "jungle juice" bottle that was present at the scene of his death. Accordingly, Fochtman opined that Elder's "use of amyl nitrate may have caused a drop in blood pressure leading to unconsciousness, the ligature not releasing, and ultimately resulting in his asphyxiation."

Although Dr. Fochtman's report played a key role in LINA's decision to deny coverage, plaintiffs did not have an opportunity to review Dr. Fochtman's report until LINA released the administrative record. Plaintiffs were thus unable to question Dr. Fochtman's conclusions, unable to review Dr. Fochtman's report in its entirety, and unable to offer evidence that counterbalanced Dr. Fochtman's statements. Plaintiffs contend that use of Dr. Fochtman's report in this manner denied them the opportunity to a full and fair hearing. This procedural irregularity

deprived plaintiffs of the opportunity to address the accuracy and reliability of the evidence.  *See Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 893-894 (10th Cir. 1988) ("A full and fair review means knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rending his decision.").  Although at this early stage the Court has not been presented with a copy of the full administrative record, and it is premature to pass judgment on the merits of Dr. Fochtman's or LINA's conclusions, such conduct may be an important factor to consider when determining the appropriate standard of review.

Furthermore, on its face the denial letter shows that LINA misconstrued and overstated Dr. Fochtman's conclusions.  Dr. Fochtman wrote in his report that Elder "may" have suffered a drop in blood pressure as a result of ingesting amyl nitrate.  LINA subsequently concluded, relying on Dr. Fochtman's report, that Elder's death "was due to an ingestion of an illicit drug."  This is not what Dr. Fochtman said.  "May have suffered" is not interchangeable with "was due to."  At the very least, this overstatement calls into question the objectivity and fairness with which the plaintiffs' claim was evaluated.

Ordinarily, additional evidence gathering in ERISA cases beyond what is contained in the administrative record is ruled out on deferential review, and is discouraged on *de novo* review to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from being substitute plan administrators. *Brown v. Seitz Foods, Inc. Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998). Plaintiffs have made a sufficient showing, at this stage, to allow some limited discovery.

I cannot now determine the precise standard of review that will govern this case, except to say that I will follow the plan language and the law as it has been formulated by the Supreme Court and the Eighth Circuit. I also cannot establish the precise limits for discovery beyond the administrative record. The parties should confer with one another and attempt to agree, in light of this decision, on the additional discovery that is needed and on the appropriate scope of discovery under both policies. I will then hold a supplemental scheduling conference, and will resolve any disputes that may remain.

Accordingly,

**IT IS HEREBY ORDERED** that the court will hold a telephone scheduling conference on **Thursday, March 12, 2009 at 1:30 p.m.** Plaintiffs' counsel shall place the call and have all necessary counsel on the line. In advance of the conference the parties must meet and confer and attempt to reach agreement

on the scope of discovery, in light of these rulings, and on a schedule for the remainder of the case. They must file a joint proposed scheduling plan no later than **Monday, March 9, 2009** setting out their proposed schedule and any disputes that remain. If disputes remain over the scope of discovery, the joint filing must set forth with specificity what discovery plaintiffs want that defendant opposes.

                                                                                         */s/ Catherine D. Perry*

                                                           CATHERINE D. PERRY
                                                           UNITED STATES DISTRICT JUDGE

Dated this 11th day of February, 2009.